UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| NORTH SIDE OIL INC, dba Gas Mart | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | USDA FILE NO. _____ |
| | ) | |
| UNITED STATES OF AMERICA, | ) | Case No. |
| DEPARTMENT OF AGRICULTURE FOOD | ) | |
| AND NUTRITION SERVICE, | ) | |
| | ) | |
| Serve: 1400 Independence Avenue, S.W. | ) | |
| Washington, D.C. 20250 | | |
| | | |
| Defendant. | | |

## COMPLAINT & PETITION OF FINAL AGENCY ACTION

NOW COMES the Plaintiff North Side Oil Inc., by and through counsel, hereby petition this Court to review the Final Agency Decision, entered by the Defendant the United States of America Department of Agriculture Food and Nutrition Service, as follows:

## PARTIES AND JURISDICTION AND VENUE

1.      Plaintiff North Side Oil Inc. ("**Gas Mart**" or "**Crown Mart**") is an incorporated company organized and existing under the laws of the State of Missouri.

2.      Plaintiff conducts business at 710 Goodfellow Boulevard, St. Louis, MO 63112-2614.

3.       Defendant, the United States of America Department of Agriculture Food and Nutrition Services ("USDA") is an agency of the executive branch of the United States government.

4.      This Court has jurisdiction over this matter pursuant to 7 U.S.C. § 2023(a)(13), 5 U.S.C. § 702, and 28 U.S.C. § 1331.

5.      This Court is the appropriate venue, pursuant to 7 U.S.C. § 2023(a)(13) and 28 U.S.C. § 1402, because Plaintiff is engaged in business in this district and this complaint is filed within thirty days after the date of delivery or service of the final notice of determination upon it, requesting the court to set aside such determination.

6.      Pursuant to 7 U.S.C. § 2023(a)(15), this action shall be a trial *de novo* in which the Court "shall determine the validity of the questioned administrative action in issue."

## GENERAL ALLEGATIONS

7.      The United States Department of Agriculture's Food and Nutrition Service administers the Supplemental Nutrition Assistance Program ("SNAP"), formerly known as the Food Stamp Program until Congress renamed it in the Food, Conservation, and Energy Act of 2008. Congress' stated goal for SNAP is to "safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households." 7 U.S.C. § 2011.

8.      Consumer participants of SNAP must use their benefits "to purchase food from retail food stores that have been approved for participation in the supplemental nutrition assistance program." 7 U.S.C. § 2013(a).

9.      If the USDA determines that a retailer who participates in SNAP has committed any act violative of the act USDA can disqualify that retailer from participating in SNAP. 7 C.F.R. § 278.6(e)(1)(i). A disqualified retailer can seek administrative review of such action. 7 C.F.R. § 279.2. Following administrative review, the aggrieved retailer can pursue judicial review in the appropriate United States district court. 7 C.F.R. § 279.7; 7 U.S.C. § 2023(a)(13). During the pendency of judicial review, the complainant can apply to the district court for a stay of the administrative action. 7 U.S.C. § 2023(a)(17).

10.     In Missouri, SNAP uses an Electronic Benefit Transfer ("EBT") system, and consumer participants receive their SNAP benefits through an EBT card. These beneficiaries can then use their EBT cards to pay for eligible food purchases at authorized stores.

11.     Gas Mart accepts SNAP benefits at its store at 710 Goodfellow Boulevard in St. Louis (the "Store" or "Gas Mart").

12.     The Store is located in the West End neighborhood that is imperiled by the socioeconomic difficulties of its residents combined with higher than normal crime rates and where a significant percent of the population is SNAP-eligible and routinely uses SNAP at the Store.

13.     The Store sells some non-food items household items like toiletries and paper goods, but it primarily sells food products including deli items, baby formula, cereal, milk, canned foods and soft drinks.

14.     The Store does not have a liquor license and sells no alcoholic beverages.

15.     The Store's customers come predominately from the immediate neighborhood, within walking distance of the Store.

16.     A substantial percentage of the Store's customers frequent the Store on a weekly or even daily basis and buy only what they can carry to their nearby homes.

17.     With the advent of the COVID-19 pandemic some other local retailers or outlets shut down decreasing the levels of nutrition opportunities among low-income households in the community surrounding the Store.

18.     On or about the dates of February 10, 2021, through February 13, 2021, USDA investigators conducted a SNAP compliance review of the Store under federal SNAP law and regulations.

3

19.     That investigation determined that personnel at the Store accepted SNAP benefits in exchange for ineligible merchandise on three separate occasions.

20.     The items sold are best described in regulatory terms as common nonfood items such as foam cups, plastic utensils, oven bags, paper towels, and plastic cups.

21.     The investigative report indicates that these three violative transactions were handled by two different clerks.

22.     The Store does not dispute that on the listed occasions, a former Gas Mart employee accepted EBT cards and charged them for both eligible and ineligible items in the transactions. The sale of the ineligible items in the EBT transaction was both a violation of store policy and contradicted the training that the employee received when he started at Gas Mart.

23.     Gas Mart has long had a policy related to accurately charging only eligible products to EBT cards.

24.     The employee who violated company and SNAP policies admitted having been trained on the proper procedure and acknowledged he failed to follow it and deviated from company policy, and as a result was terminated and no longer works at Gas Mart.

25.     Upon learning of the violations, Gas Mart instituted additional training with all employees to reinforce the importance of conforming with the law and following company policy concerning SNAP benefits.

26.     As a result of evidence compiled from that investigation, the Office of Retailer Operations and Compliance informed Gas Mart, in a letter dated February 24, 2021, that the firm was charged with violating the terms and conditions of the SNAP regulations, 7 CFR § 278.2(a).

27.     That letter states, in part, that the violations ". . . warrant a disqualification period of six months (Section 278.6(e)(5))."

4

28.     That letter also states that under certain conditions, Food and Nutrition Service ("FNS") may impose a civil money penalty (CMP) in lieu of a disqualification (Section 278.6(f)(1)).

29.     Gas Mart representatives responded to the letter through a phone call and email and communicated with the assigned Retailer Operations staff member.

30.     After giving consideration to the evidence, the Office of Retailer Operations and Compliance notified Gas Mart in a letter dated March 16, 2021, that it determined that violations had occurred at the firm, and that a six month period of disqualification from participating as an authorized firm in SNAP was warranted.

31.      This determination letter also stated that Gas Mart's eligibility for a hardship CMP according to the terms of Section 278.6(f)(1) of the SNAP regulations was considered.

32.     The letter stated ". . . you are not eligible for the CMP because there are other authorized retail stores in the area selling as large a variety of staple foods at comparable prices."

33.     Gas Mart submitted a letter containing additional information. That information included an explanation of the violation, a response to it, a description of the community of Gas Mart's client's, and a response from community members (including local community leaders) addressing how suspending the store from the Supplemental Nutrition Assistance Program would adversely affect the community.

34.     The USDA issued a "Final Agency Decision" on March 16, 2021, issuing a six-month disqualification from SNAP use at the Store in lieu of a hardship civil money penalty.

35.     Disqualification from SNAP will have crippling economic consequences to Gas Mart as a large segment of its customer base depends on SNAP benefits and Gas Mart can no

longer serve these customers who must overcome the burden of trying to find alternative SNAP participant retailers in the immediate vicinity.

36.     Therefore, Gas Mart will suffer irreparable injury from its disqualification from SNAP unless this Court stays the USDA's administrative action during the pendency of this review. 7 U.S.C. § 2023(a)(17).

37.     The USDA's decision to suspend the SNAP benefits for six months at this location will also severely impact the community, as stated by community members.

38.     Many of the residents in the community are elderly, do not have cars, and rely on walking and public transportation. The nearest grocery store, United Provisions, is a walk of almost a mile, taking an estimated 17 minutes each way for a healthy shopper.

39.     That grocery store is not open late, meaning residents that work late would be unable to get groceries at the end of their shift.

40.     The letters from the community members contradicted the findings of the USDA and FNS, as they stated this Gas Mart fills a void and provides essential access to nutrition for low income residents.

41.     Gas Mart further caters to customers and clients who do not have adequate cooking equipment in their residences, and they provide SNAP eligible foods that can be conveniently cooked at the store.

42.     That service is not merely a convenience, rather it makes a significant difference for the many local residents who live in rented rooms or other homes without traditional kitchens and allows them the opportunity to get a hot cooked meal each day.

43.     Those residents have been further impacted by the COVID-19 pandemic, as difficulties surrounding living and working have increased.

44.     A number of local residents have stated that they do not have cars and that Gas Mart is the only store in the neighborhood near them, and certainly the only store that accepts EBT funds.

45.     The USDA's decision to suspend SNAP benefits at Gas Mart goes beyond a mere inconvenience to SNAP users.

46.     Gas Smart's suspension from SNAP for the isolated mistakes of former employees would result in significant harm to Gas Mart and to the community that Gas Mart and its customers call home.

## FIRST CAUSE OF ACTION – DE NOVO TRIAL

47.     Plaintiff restates and re-alleges paragraphs 1 through 46 as if fully set forth herein.

48.     Plaintiff is entitled to a *de novo trial* pursuant to 7 CFR § 279.7(c).

49.     Plaintiff was disqualified under SNAP through the Final Administrative Action issued by USDA and requests a de novo trial so that this Court can determine the validity of the Final Administrative Action.

50.     Plaintiff is entitled to an order temporarily staying USDA's Final Administrative Action during the pendency of this Action.

## SECOND CAUSE OF ACTION – DECLARATORY RELIEF

51.     Plaintiff restates and re-alleges paragraphs 1 through 46as if fully set forth herein.

52.     The Declaratory Judgment Act ("the Act") provides in relevant part that: "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28

U.S.C. § 2201(a).  The Act further provides: "Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." *Id.*

53.     To state a claim under the Act, the plaintiff must meet the "case or controversy" requirements of Article III of the Constitution and have standing to sue under the relevant state law. *Cooper Indus., LLC v. Spectrum Brands, Inc.*, 2017 WL 1078045, at *1-2 (E.D. Mo. Mar. 22, 2017).

54.     An actual and justiciable controversy exists between Gas Mart and the United States of America, and this Court is vested with the power to declare the rights and other legal relations of the parties with respect to the suspension of SNAP benefits set forth herein.

55.     An actual and justiciable controversy exists because Gas Mart, pursuant to 7 CFR § 278.6(f)(1), meets the standard of eligibility to receive a civil money penalty in lieu of a temporary six-month suspension.

56.     According to statements from local citizens and community leaders, such a hardship would exist if this suspension is upheld.

57.     An actual and justiciable controversy further exists because the USDA's decision to impose a six-month period of disqualification against Gas Mart will severely impact Gas Mart as well as the current customers and the community.

WHEREFORE, Plaintiff prays for judgement against the Defendant as follows:

A.     Judgment that USDA's final administrative action is invalid;

B.     For a de novo trial so that this Court can determine the validity of the USDA's final administrative action;

C.     An order temporarily staying the USDA's final administrative action during the pendency of this action; and

D.      For such other relief as the Court deems just and equitable.

**DEMAND FOR JURY TRIAL**

Gas Mart demands that all issues be tried by a jury.



DATED: September 24, 2021                    ARMSTRONG TEASDALE LLP


                                            By:   /s/ Christopher R. LaRose
                                                  Christopher R. LaRose          #59612MO
                                                  7700 Forsyth Blvd., Suite 1800
                                                  St. Louis, Missouri 63105
                                                  314.621.5070
                                                  314.621.5065 (facsimile)
                                                  clarose@atllp.com

                                            ATTORNEYS FOR GAS MART